UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
TIGRENT GROUP, INC.,                                        :
                                                            : **MEMORANDUM**
                                     Plaintiff,             : **DECISION AND ORDER**
                                                            :
            - against -                                     : 12 Civ. 1314 (BMC)
                                                            :
PROCESS AMERICA, INC.,                                      :
                                                            :
                                     Defendant.             :
                                                            :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

This case is before me on plaintiff's motion to dismiss defendant's counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion is denied.

## BACKGROUND

This is a diversity action in which plaintiff Tigrent Group, Inc. ("Tigrent") brought a breach of contract claim against defendant Process America, Inc. Process America solicits and refers merchants to bank card processors. Process America then provides the merchants with customer service and card application processing services under the contracts between Process America and the merchants. Tigrent is a merchant who entered into such a contract with Process America (the "Merchant Processing Agreement," or "MPA").

Tigrent alleges that the parties also signed a separate contract – the "Merchant Reserve Acknowledgment," or "MRA" – which established a reserve account to provide security for the payment of refunds to Tigrent's customers. The relationship between the MPA and the MRA is unclear from the parties' pleadings; according to Tigrent, the parties' agreement about the

reserve account is governed by terms from each contract. Tigrent also alleges that it was required to sign the MRA "pursuant to the MPA," which required Tigrent to establish a reserve account as a condition of processing bank card transactions. Tigrent claims that the MRA required Process America to return the reserve funds within 180 days after the contract's termination. Although the MRA was terminated more than 180 days ago, Process America has yet to return the funds.

Process America asserted a counterclaim against Tigrent for breach of contract. Process America alleges that Tigrent breached the MRA by engaging in sales practices that permitted the delivery of goods and services two and three years from the time customers' credit cards were swiped. According to Process America, it has suffered damages because it is exposed to a longer window of risk than Process America initially anticipated. The counterclaim alleges that Tigrent made "repeated oral representations" that its services were delivered to its customers within a 30- to 90-day window of when the customers' credit cards were swiped. The counterclaim also alleges that Tigrent filled out a Mail and Telephone Order Merchant Addendum ("MOTO") in which Tigrent represented that its goods were shipped "immediately." According to the counterclaim, the MOTO was attached to the "Merchant Application," which incorporated the terms of the MPA.

Tigrent moved to dismiss this counterclaim. Tigrent argues that the counterclaim is deficient because it does not specify which provision of the MRA has been breached. Tigrent also argues that the counterclaim must be dismissed because Process America has failed to allege that it has suffered any damages.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide enough factual allegations to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). On a Rule 12(b)(6) motion, this Court accepts the material facts alleged in the complaint as true and draws "all reasonable inferences" in favor of the party opposing the motion. Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 89-90 (2d Cir. 2004). In general, the parties' pleadings and their briefing on the instant motion do not provide a clear picture of the documents that form the operative contract in this dispute. Since neither party has provided the Court with these documents, however, the Court will envision the MPA; MRA; "Merchant Application"; and MOTO in a light most favorable to Process America. See id.

With respect to Tigrent's first argument, Process America acknowledges that the MRA does not contain a provision requiring the delivery of goods or services within any particular time period. Instead, Process America urges that the MRA did not fully integrate the parties' contractual relationship and that the "full understanding" between the parties includes the MRA; MPA; MOTO; and oral communications.[1]

An agreement is integrated if it "represents the entire understanding of the parties to the transaction." Investors Ins. Co. v. Dorinco Reins. Co., 917 F.2d 100, 104 (2d Cir. 1990). When a contract is found to be not fully integrated, the parol evidence rule does not apply and the court

---

[1] Tigrent argues that Process America's opposition to its motion should be struck because it "injects new factual allegations." Tigrent does not specify exactly which "factual allegations" are supposedly new, but it seems that Tigrent is referring to Process America's argument that Tigrent orally promised that its goods and services would be delivered immediately. But page 14, paragraph 13 of the counterclaim alleges the following: "in addition to the MOTO, Tigrent made repeated oral representations to Process America that it was delivering its goods and services within the acceptable time period." Process America's opposition papers add color to this allegation by claiming that the oral representation was part of the contract, but this is a legal argument rather than a factual allegation. There is thus no reason to strike Process America's opposition papers.

may consider extrinsic evidence of separate oral agreements to determine the full nature of the parties' agreements. See Starter Corp. v. Converse, Inc., 170 F.3d 286, 295 (2d Cir. 1999). A contract is fully integrated if it includes a "merger clause" – a recitation that the written document reflects the parties' entire agreement. See Mfrs. Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993). Since neither party has provided this Court with the MRA or represented to the Court that the MRA does or does not contain a merger clause, this Court has no way to know. Drawing all inferences in a light most favorable to Process America, which argues that the MRA was not fully integrated, this Court will assume that there was no merger clause. When there is no merger clause, a court must look to "surrounding circumstances to see if the parties would ordinarily be expected to embody the agreement in a writing based upon the type of transaction involved, the scope of the written contract and the content of any other agreements." Starter Corp., 170 F.3d at 295.

Without seeing the agreements signed by the parties, it is nearly impossible to do this analysis. However, construing the facts in a light most favorable to Process America, it is plausible that the parties' agreement was comprised of a number of different writings that were not fully integrated. Process America argues that it was implicit in the parties' agreement that the reserve funds would not be returned to Tigrent until Process America no longer needed the reserve funds to protect against losses suffered as a result of customer returns. This makes sense. Considering the counterclaim's allegation that Tigrent orally represented that it was delivering its goods and services immediately, it is plausible that the parties mutually understood this to be a term of the agreement. Dismissal under Rule 12(b)(6) is therefore unwarranted based on Process America's failure to specify a particular written contract provision. This is especially true

because Process America argues that the MOTO, which contained a written representation that Tigrent would deliver its goods and services immediately, was part of the parties' agreement.

Tigrent argues that any oral agreement would be void for violating the statute of frauds. According to N.Y. Gen. Oblig. Law § 5–701(a)(1), any agreement that "by its terms is not to be performed within one year from the making thereof" is void if not in writing. However, it is well settled that for a contract to fall within the statute of frauds, there must be absolutely no possibility that the contract could be performed within one year. See Ohanian v. Avis Rent A Car Sys., Inc., 779 F.2d 101, 106 (2d Cir. 1985). Tigrent argues that, under New York law, "a service contract of indefinite duration, in which one party agrees to procure customers or accounts or orders on behalf of a second party," falls within the statute of frauds. This is generally true. See Gersten-Hillman Agency, Inc. v. Heyman, 68 A.D.3d 1284, 892 N.Y.S.2d 209, 212 (3d Dep't 2009). However, the rationale for this rule is that performance of those types of service contracts is "dependent, not upon the will of the parties to the contract, but upon that of a third party." Id. at 212. If either party is able to terminate the contract, for example, New York courts hold that the contract is able to be completed within one year and is thus outside the statute of frauds. N. Shore Bottling Co. v. C. Schmidt & Sons, Inc., 22 N.Y.2d 171, 176-77, 239 N.E.2d 189 (1968). Again, this Court does not know whether the parties could terminate their contract, because the Court has not read the contract. However, since the Court is construing the contract in a light most favorable to Process America – and because Tigrent raised its statute of frauds argument in its reply brief, thus affording Process America no chance to respond to this argument – the Court will assume that both parties had the right to terminate the contract.

In response to Tigrent's assertion that the counterclaim should be dismissed because Process America has not suffered any damages, Process America concedes that no damages have

been suffered yet. Under New York law, one element of a prima facie case for breach of contract is "damages resulting from the breach." Nat'l Market Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004). However, the fact that Process America has not yet suffered damages is not fatal to its claim. New York law provides that "since nominal damages are always available in breach of contract actions, all of the elements necessary to maintain a lawsuit and obtain relief in court [are] present at the time of the alleged breach." Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501 (1993). "A breach of contract case, therefore, is ripe immediately upon the breach, even where damages remain uncertain." Argonaut P'shp., L.P. v. Bankers Trustee Co., No. 96-CV-1970, 1997 U.S. Dist. LEXIS 1092, at *14 (S.D.N.Y. Feb. 4, 1997); see also LNC Invs., Inc. v. First Fidelity Bank, No. 92-CV-7584, 1994 WL 73648, at *5 (S.D.N.Y. Mar. 3, 1994).

## CONCLUSION

Tigrent's [15] motion to dismiss is denied.

**SO ORDERED.**

                                                                  s/ BMC
                                                                   U.S.D.J.

Dated: Brooklyn, New York
       June 5, 2012